No. 24-____

# In the United States Court of Appeals for the Ninth Circuit

SUZANNE MALLOUK, et al., on behalf of themselves and all others similarly situated,
*Plaintiffs-Petitioners,*

v.

AMAZON.COM, INC.,
*Defendant-Respondent,*

On Petition for Permission to Appeal from the United States
District Court for the Western District of Washington, Seattle
Case No. 2:23-cv-00852-RSM (The Hon. Ricardo S. Martinez)

## PETITION FOR PERMISSION TO APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Phillip L. Fraietta
Julian C. Diamond
Matthew A. Girardi
BURSOR & FISHER, P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
(646) 837-7150
*pfraietta@bursor.com*
*jdiamond@bursor.com*
*mgirardi@bursor.com*

Jennifer D. Bennett
GUPTA WESSLER LLP
505 Montgomery Street
Suite 625
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

Peter Romer-Friedman
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
(202) 355-6364
*peter@prf-law.com*

*(Counsel continued on inside cover)*

August 6, 2024                    *Counsel for Plaintiffs-Petitioners*

Albert Fox Cahn
David Siffert
SURVEILLANCE TECHNOLOGY
OVERSIGHT PROJECT
40 Rector Street
9th Floor
New York, NY 10006
(212) 518-7573
*albert@stopspying.org*
*david@stopspying.org*

Christopher K. Leung
LEUNG LAW PLLC
1 Dock 72 Way
7th Floor
Brooklyn, NY 11205
(212) 498-8991
*chris@impact-lit.com*

# TABLE OF CONTENTS

Table of authorities ...................................................................................ii

Introduction...............................................................................................1

Background ...............................................................................................2

    I.    New York City's biometric privacy law .................................. 2

    II.   Amazon does not comply with New York City's biometric
        privacy law, even long after it received notice of its violations. ............5

    III.  Amazon customers sue Amazon for violating New York City's
        biometric privacy law...........................................................................7

Reasons for granting the petition ...............................................................9

    I.    The district court manifestly erred in holding that a requirement
        to file pre-suit notice "prior to initiating any action" applies to
        absent class members who do not initiate any action. .......................10

    II.   Review is particularly important here because the dismissal of the
        absent class members' signage claims threatens the viability of the
        individual plaintiffs' claims................................................................17

Conclusion...............................................................................................18

i

# TABLE OF AUTHORITIES

## Cases

*Albemarle Paper Co. v. Moody,*
   422 U.S. 405 (1975) .................................................................... 13

*Alvarez v. Annucci,*
   38 N.Y.3d 974 (2022) ................................................................. 11

*Amin v. Mercedes-Benz USA, LLC,*
   301 F. Supp. 3d 1277 (N.D. Ga. 2018) .................................... 14

*Bates v. Bankers Life & Casualty Co.,*
   848 F.3d 1236 (9th Cir. 2017) ..................................................... 9

*Bosque v. Wells Fargo Bank, N.A.,*
   762 F. Supp. 2d 342 (D. Mass. 2011) ...................................... 14

*Chamberlan v. Ford Motor Co.,*
   402 F.3d 952 (9th Cir. 2005) ............................................... 2, 10

*Gaines v. City of New York,*
   215 N.Y. 533 (1915) .................................................................... 12

*Guerrero-Lasprilla v. Barr,*
   589 U.S. 221 (2020) ................................................................... 16

*Harris v. County of Orange,*
   682 F.3d 1126 (9th Cir. 2012) .................................................. 13

*Harris v. Niagara Falls Board of Education,*
   6 N.Y.3d 155 (2006) ................................................................... 12

*In re Bang Energy Drink Marketing Litigation,*
   2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ............................ 14

*In re Household International Tax Reduction Plan,*
   441 F.3d 500 (7th Cir. 2006) .................................................... 13

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010).................................................................14

*Leyva v. Medline Industries Inc.*,
  716 F.3d 510 (9th Cir. 2013) ...............................................................................17

*Majewski v. Broadalbin-Perth Central School District*,
  91 N.Y.2d 577 (1998) ..........................................................................................10

*O'Connor v. Ford Motor Co.*,
  567 F. Supp. 3d 915 (N.D. Ill. 2021) ..................................................................14

*Paulino v. Conopco, Inc.*,
  2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .......................................................14

*Ruffin v. Lion Corp.*,
  15 N.Y.3d 578 (2010) ...........................................................................................12

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010) ..............................................................................................15

*Stillmock v. Weis Markets, Inc.*,
  385 F. App'x 267 (4th Cir. 2010)..........................................................................17

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) ..............................................................................................13

## Statutes

N.Y.C. Admin. Code § 22-1201....................................................................................3, 4

N.Y.C. Admin. Code § 22-1202 ...................................................................................4, 5

N.Y.C. Admin. Code § 22-1203 ...............................................................................*passim*

## Rules

N.Y Ct. R. 202.5-b ......................................................................................................12

## Other Authorities

1 Newberg & Rubenstein
    on Class Actions (6th ed. 2024) ........................................................ 12

Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure (3rd ed. 2008)................................. 12

Merriam-Webster Dictionary,
    https://www.merriam-webster.com/dictionary/initiate.................................. 11

Merriam-Webster's Dictionary of Law (2016)........................................... 11

New Oxford American Dictionary (3rd ed. 2010)....................................... 11

## INTRODUCTION

For years, Amazon has been collecting biometric information from every person that walks into its Amazon Go convenience stores—without telling them. Eight of these stores are in New York City. And New York City's biometric information privacy law prohibits businesses from collecting this information without posting conspicuous signs that notify customers before they enter.

For over a year after this law went into effect, Amazon did not post any signs informing customers that it was collecting their biometric information. Following a *New York Times* article that publicized its practices, the company changed course and began posting signs. But those signs are false. Although Amazon collects biometric information from *every* Amazon Go customer, the signs say that Amazon does *not* collect biometric information unless a customer uses a palm scanner to enter the store. And Amazon refuses to change the signs. The plaintiffs here claim that Amazon's collection of biometric information from unsuspecting customers without proper signage violates New York City's biometric privacy law. And they seek to pursue that claim on behalf of a class of similarly situated Amazon Go customers.

But the district court held that they may not do so. Not because they are inadequate class representatives or there aren't common questions, but for the sole reason that in the district court's view, New York City's biometric privacy law requires every single class member to personally give Amazon written pre-suit notice.

But the text of the law says otherwise. The law requires that a consumer must provide notice 30 days prior to "*initiating*" a suit. N.Y.C. Admin. Code § 22-1203 (emphasis added). Unnamed class members do not initiate lawsuits. They are not, therefore, required to give pre-suit notice. The district court's decision to the contrary flies in the face of the text of the statute and conflicts with how notice and exhaustion provisions are ordinarily interpreted—not to mention common sense. There's no reason to require absent class members to give notice of a statutory violation that the defendant is already aware of and refuses to fix. And the New York City Council imposed no such requirement.

This Court has long recognized that where a district court's decision to forbid class claims rests on a "manifest error of law," it makes no sense to force parties to wait until after final judgment for this Court to overturn it. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). That's particularly true here, where the inability to proceed as a class action threatens the plaintiffs' ability to proceed with the claim at all. This Court should grant permission to appeal.

## BACKGROUND

### I.  New York City's biometric privacy law

Over the past decade, commercial establishments such as retail stores, entertainment venues, and restaurants have increasingly sought to collect and use their customers' biometric information. Council of the City of New York, Committee

Report of the Governmental Affairs Division (Dec. 10, 2020), ECF 49-1, at 2–9 ("Comm. Rpt."). Businesses use facial recognition software to identify customers; they use consumers' physical attributes to track them around a store—collecting data about what items they look at and for how long; they collect palmprints, faceprints, body scans, and retinal scans. *Id.* Some businesses use this information to identify shoplifters; some to try to discern the highest possible price a particular customer will pay for a product; some to develop targeted marketing. *Id.* And some businesses profit by selling or sharing the information. *Id.* at 14.[1]

A few years ago, New York's city council enacted a biometric information privacy law to give New York City consumers greater control over businesses' collection and use of their biometric information. *See* Biometric Information Identifier Law, N.Y.C. Admin. Code § 22-1201 *et seq*. The committee report accompanying the law provided a detailed examination of how companies were using biometric information and the risks that accompanied that use. Comm. Rpt. at 2–20. The city council explained that recognition software is often less accurate at identifying women and people of color—meaning, for example, that stores might misidentify someone as a shoplifter simply because they're Black or female. *Id.* at 9–10. The legislators discussed businesses' use of tracking technologies to enable price

---

[1] Internal quotation marks, citations, alterations, and emphases are omitted from quotations throughout this petition. In addition, all references to ECF are to the district court docket.

discrimination. *Id.* at 6. And they worried extensively about the threat to privacy—particularly when a business does not inform its customers of what information it collects and how it might use that information. *Id.* at 13–16.

The biometric privacy law addresses these concerns in two ways. First, it requires "any commercial establishment that collects, retains, converts, stores, or shares [customers'] biometric identifier information" to notify its customers by "placing a clear and conspicuous sign near all of the <u>commercial</u> establishment's customer entrances." N.Y.C. Admin. Code § 22-1202(a). That sign must be written in "plain, simple language" and inform customers of the information that is "being collected, retained, converted, stored or shared." *Id.* Second, the law makes it "unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." *Id.* § 22-1202(b).

In passing the law, the city council recognized that companies collect a wide range of biometric information from "basic physical attributes" like body "shape or composition" to "fingerprint[s], iris and retinal scans," "facial recognition," and even DNA. Comm. Rpt. at 2-3. Accordingly, the law defines "biometric identifier information" expansively to include any "physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual." N.Y.C. Admin. Code § 22-1201.

To enforce the law, the city council gave consumers a private right of action. *Id.* § 22-1203 (allowing an "aggrieved" person to "commence an action in a court of competent jurisdiction"). That private right of action contains a pre-suit notice requirement for claims challenging an establishment's failure to post compliant signs: "At least 30 days prior to initiating any action against a commercial establishment for a violation of" § 22-1202(a)'s signage requirement, "the aggrieved person shall provide written notice to the commercial establishment setting forth such person's allegation." *Id.* If the establishment "cures the violation" within 30 days and provides a written statement that "no further violations shall occur, no action may be initiated." *Id.* But if the establishment "continues to violate" the law, "the aggrieved person may initiate an action." *Id.*[2]

## II.    **Amazon does not comply with New York City's biometric privacy law, even long after it received notice of its violations.**

In 2018, Amazon launched its own chain of convenience stores, which it calls "Amazon Go" stores. First. Am. Compl. (FAC), ECF 42 ¶ 68. When entering an Amazon Go store, customers are required to identify themselves by scanning their credit card, a mobile phone code linked to their Amazon account, or their own palm.

---

[2] The notice requirement applies only to claims that a business collected biometric information without posting proper signs informing its customers. N.Y.C. Admin. Code § 22-1203. It does not apply to any claim alleging that a business unlawfully sold, leased, traded, or shared biometric information, which may be initiated without pre-suit notice. *Id.*

*Id.* ¶ 74. Amazon then uses hundreds of cameras and sensors throughout the store to capture each customer's physical characteristics (including the size and shape of each customer's body), create a digital skeleton of the customer linked to their identity and payment method, and track that customer through the store as they shop. *Id.* ¶¶ 79–81. Because Amazon tracks them, customers need not check out when they're finished shopping—Amazon automatically charges shoppers for what they took from the store. *Id.* ¶ 68.

In New York City, Amazon operates eight Amazon Go stores itself, as well as two additional stores in partnership with Starbucks. *Id.* ¶¶ 69, 93–95. Like other Amazon Go stores around the country, these stores collect biometric information about the physical characteristics of every customer that enters them and use this physiological information to identify and track customers. *Id.* ¶¶ 72, 79–81, 115. Yet, for over a year after the New York City biometric privacy law went into effect, Amazon simply ignored the statute's requirement that it post signs notifying customers of its collection and use of their biometric information. *Id.* ¶ 15. Alfredo Perez, one of the four named plaintiffs in this lawsuit, sent a letter notifying Amazon of its violation, but Amazon did not respond to him or stop its violations. *Id.* ¶¶ 133–34.

It was only after a *New York Times* reporter discovered that Amazon Go stores were "awash in cameras, sensors and palm scanners," yet lacked any notice to

consumers about the collection of their biometric information, that Amazon finally started posting signs in its stores. *Id.* ¶ 19 & n.4. But not only are Amazon's signs designed to be inconspicuous, they are also inaccurate. *Id.* ¶¶ 20, 174, 177, 216. Although Amazon collects biometric information from every customer who walks into the store, its signs say that "[n]o biometric information will be collected from customers who do not use an Amazon One palm scanner." *Id.* ¶ 177. As a result, all consumers are led to falsely believe that their biometric information will not be collected unless they decide to scan their palm to enter the store. Amazon has been repeatedly notified that its signs violate New York City's law, but to this day the company refuses to change them. *Id.* ¶¶ 144–45, 161–62.

### III. Amazon customers sue Amazon for violating New York City's biometric privacy law.

This lawsuit was filed as a proposed class action by four Amazon Go customers. FAC ¶¶ 1, 31–34. As relevant here, the plaintiffs allege that Amazon has violated—and continues to violate—New York City's requirement that a company that collects customers' biometric information post a "clear and conspicuous sign" telling them so. *Id.* ¶¶ 203–224.[3] Before initiating the lawsuit, three of the named plaintiffs sent written notice to Amazon. *Id.* ¶¶ 133, 144, 161. Named plaintiff William

---

[3] The plaintiffs also brought additional claims, not at issue here, including claims against Starbucks for the stores it operates in conjunction with Amazon. The district court dismissed Starbucks from the case entirely.

Novolt notified Amazon not only on his behalf, but on behalf of other "similarly situated customers." *Id.* ¶ 161; *see also id.* ¶ 144 (explaining that named plaintiff Suzanne Mallouk also sent written notice informing Amazon that it had unlawfully collected not only her biometric information but that of "other customers who entered the store" without posting proper signs informing them). But instead of curing the violation, Amazon responded that it would not do so. *Id.* ¶¶ 145, 162. The named plaintiffs therefore initiated this lawsuit to get Amazon to comply with New York City's law and ensure that Amazon Go customers receive notice before they enter the store that Amazon will collect their biometric information.

In response, Amazon argued that the district court should strike the class allegations because, in its view, every absent class member was required to give Amazon pre-suit notice. Mot. Dismiss, ECF 45, at 18–19. According to Amazon, it was therefore "clear from the pleadings that a class could not be certified." *Id.* at 18. The plaintiffs responded by explaining that by its terms, New York's biometric privacy law only requires that a person "*initiating* any action" provide pre-suit notice, N.Y.C. Admin. Code § 22-1203 (emphasis added). Opp'n Mot. Dismiss, ECF 49, at 15. And unnamed class members do not initiate an action; the named plaintiffs initiated this lawsuit. *Id.* That limited requirement, the plaintiffs explained, accords with the well-established principle that pre-suit notice requirements ordinarily need only be satisfied by a named plaintiff in a class action. *Id.* at 16. And, in any event,

8

the plaintiffs pointed out, the named plaintiffs here explicitly provided notice on behalf of the absent class members too. *Id* at 17. So even if there were some absent class member notice requirement, it was satisfied. *See id.*

The district court, however, held that each absent class member was required to personally give notice. In the court's view, "NYC's overall purpose" was to limit relief to those who had sent their own notice. Order, ECF 66, at 8. The court did not explain what purpose could be served by requiring every consumer to personally notify a company of a violation it already knew about and refused to remedy. But the court dismissed the absent class members' signage claims on this basis anyway. *Id.* at 9, 13.[4]

## REASONS FOR GRANTING THE PETITION

A decision dismissing absent class members' claims is the "functional equivalent of denying a motion to certify" those claims as a class action. *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017). The plaintiffs, therefore, may seek review of that decision under Rule 23(f), which authorizes parties to petition this Court for permission to appeal class certification decisions. *See id.* (Rule 23(f) is a "proper avenue[ ] for appealing an order striking class allegations").

---

[4] In striking the absent class members (as well as elsewhere in the opinion), the district court mistakenly refers to § 22-1201, the definition section of the statute, instead of § 22-1202, the section that contains the prohibitions that the complaint alleges Amazon violated. *See id.* at 9, 10, 12, 13.

The district court's class notice decision is precisely the kind of decision that warrants interlocutory review. It rests on a pure question of law: Are absent class members required to personally give pre-suit notice under New York City's biometric privacy law? The district court's answer to that question was "manifestly erroneous." *Chamberlan*, 402 F.3d at 959. And it threatens the named plaintiffs' ability to proceed with the lawsuit. *Cf. id.* (listing inability to pursue low-damages claims individually as reason for permitting 23(f) appeal). This Court should grant permission to appeal.

**I.      The district court manifestly erred in holding that a requirement to file pre-suit notice "prior to initiating any action" applies to absent class members who do not initiate any action.**

The district court gave only one reason for dismissing absent class members' claim that Amazon unlawfully collects customers' biometric information without informing them: the court's belief that New York City's biometric privacy law requires that every absent class member personally give pre-suit notice. But that is not what the law says. The law requires that a person that *files* a lawsuit give pre-suit notice. And absent class members did not file this lawsuit.

Like any statute, the interpretation of New York law must begin with the text. *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 583 (1998). And where the text is clear, that is also where the inquiry ends. *Alvarez v. Annucci*, 38 N.Y.3d 974, 983

(2022). "[W]hen a statute's language is clear and unambiguous, courts must give effect to its plain meaning." *Id.* That's precisely the case here.

The biometric privacy law states: "At least 30 days prior to *initiating* any action against a commercial establishment for a violation of [the signage requirement], the aggrieved person shall provide written notice to the commercial establishment." N.Y.C. Admin. Code § 22-1203 (emphasis added). In case that weren't enough, it then repeats twice more that pre-suit notice is a requirement of "initiat[ing]" a lawsuit. *Id.* ("If, within 30 days, the commercial establishment cures the violation . . ., no action may be *initiated* against the commercial establishment for such violation." (emphasis added)); *id.* ("If a commercial establishment continues to violate subdivision a of section 22-1202, the aggrieved person may *initiate* an action against such establishment." (emphasis added)). There is no requirement that anyone who later joins an action or benefits from it or is ultimately an unnamed class member file pre-suit notice—just the person who "initiate[s]" it.

To "initiate" an action is to begin it—that is, to file a lawsuit. That follows directly from the ordinary meaning of the word "initiate." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/initiate (defining initiate as "to cause or facilitate the beginning of"; to "set going"); Initiate, New Oxford American Dictionary 894 (3rd ed. 2010) (defining initiate as to "[c]ause (a process or action) to begin"); Merriam-Webster's Dictionary of Law 193 (2016)

(offering as one definition of the word "file," "to initiate (a judicial or administrative proceeding)").

And it's how the term has long been used in New York law. *See, e.g.*, *Harris v. Niagara Falls Bd. of Educ.*, 6 N.Y.3d 155, 158 (2006), *superseded on other grounds as noted in Ruffin v. Lion Corp.*, 15 N.Y.3d 578, 581 (2010) ("[A] party initiates an action or special proceeding by paying the necessary fee, obtaining an index number and filing the initiatory papers—a summons and complaint or a summons with notice in an action, or a petition in a special proceeding—with the clerk of the court."); *Gaines v. City of New York*, 215 N.Y. 533, 541 (1915) (a plaintiff "initiates a proceeding by the service of process"); N.Y. Ct. R. 202.5-b(d)(3)(ii) (referring to documents that begin a case as "documents initiating an action").

By definition, absent class members do not "initiate" lawsuits; named plaintiffs do. *See* 1 Newberg & Rubenstein on Class Actions § 1:5 (6th ed. 2024) ("Class members are . . . absent, unnamed parties who did not initiate the action but who will be bound by any class judgment."); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1796.1 (3d ed. 2008) (explaining that absent class members "did not initiate the action and are not actively participating in it"). This suit is no different. It was filed—initiated—by the four named plaintiffs, not any absent class member. By its terms, then, the pre-suit notice requirement, at most, applies only to those named plaintiffs.

That accords with the purpose of pre-suit notice. Pre-suit notice allows a business to be made aware of a potential violation of the statute's signage requirement and gives the business an opportunity to cure that violation before being sued. *See In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 501 (7th Cir. 2006) (explaining purpose of pre-suit exhaustion generally). That purpose is accomplished once a named plaintiff provides notice. There's no reason to require absent class members to personally notify a business of what it already knows. But under the district court's decision, every New York City Amazon Go customer would have to send Amazon a pre-suit letter telling the company that it failed to post signs notifying customers that it was collecting their biometric information—even though Amazon has already said that it refuses to cure the violation. That makes no sense. And it is not what the law requires.

In limiting the pre-suit notice requirement to those who "initiate" an action, New York City's biometric privacy law is in good company. Many statutes—from ERISA to Title VII of the Civil Rights Act to a host of state laws—do not require absent class members to personally satisfy notice or exhaustion requirements if a named plaintiff has done so. *See, e.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (Title VII); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 389 n.6 (1977) (same); *In re Household Int'l Tax Reduction Plan*, 441 F.3d at 501 (collecting cases); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1137 (9th Cir. 2012) (state law). This includes New York's warranty

law, one of the most commonly used consumer protection statutes. *See, e.g.*, *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *9 (N.D. Cal. Feb. 6, 2020); *Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015). Where an absent class member's claims are no different than the named plaintiff's, there's no reason to require that class members provide separate notice.[5]

That's the case here: The requirement that businesses post conspicuous signs disclosing their collection of biometric information does not vary by customer. New York City did not require anyone other than someone initiating an action to file pre-suit notice, because there was no reason to do so. In holding to the contrary, the district court relied on its belief that the city council's "overall purpose [was] to limit statutory damages to plaintiffs who fully comply with statutory pre-[suit] notice requirements." Order at 8. But nothing in the biometric privacy law—or, for that matter, its legislative history—says that. The court cited the first sentence of the private right of action provision, which states that "[a] person who is aggrieved by a

---

[5] Likewise, if there are several named plaintiffs in a putative class action, courts routinely interpret consumer protection laws to only require written notice by a *single* named plaintiff. As one court explained, "it is difficult to see how the notice function of the demand letter would be better served by requiring [other named] plaintiffs to send individualized demand letters, but not other members of the putative class." *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 354 (D. Mass. 2011) (holding one named plaintiff could rely on another named plaintiff's notice for a class under Mass. law); *accord O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 975 (N.D. Ill. 2021) (same); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018) (same under Georgia law); *In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010) (same under Cal. law).

violation of this chapter may commence an action in a court of competent jurisdiction on his or her own behalf against an offending party." N.Y.C. Admin. Code § 22-1203. But that sentence has nothing to do with pre-suit notice. Indeed, it provides a private right of action for *all* claims under the statute, including those that the law specifies do *not* require any pre-suit notice. *Id.* ("No prior written notice is required for actions alleging a violation of subdivision b of section 22-1202."). Its purpose, therefore, cannot be to limit statutory damages to consumers who have filed pre-suit notice. When the law does discuss pre-suit notice, its instructions are clear: It is required only before "initiating" suit—something, again, absent class members do not do.

Below, Amazon argued that under New York law, the biometric privacy statute is insufficient to authorize class actions for statutory damages in state court. ECF 45, at 19; ECF 51, at 8–9.[6] Even if that were correct, it would be irrelevant. The Supreme Court has long held that plaintiffs who satisfy Rule 23's requirements may bring class actions—including actions for statutory damages—in federal court to enforce state law, even if the state law says otherwise. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 415 (2010); *id.* at 397 (noting that the state law at

---

[6] Amazon's premise is dubious. Courts interpreting a similar provision of California law have rejected the argument that it bars class actions. *See Schilling v. Transcor Am., LLC*, 2010 WL 583972, at *11 (N.D. Cal. Feb. 16, 2010); *Craft v. Cnty. of San Bernardino*, 2006 WL 4941829, at *3 (C.D. Cal. Mar. 23, 2006).

issue was a New York statute). And in interpreting statutes, we "assume" that the legislature is "aware of relevant judicial precedent when it enacts a new" law. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233 (2020). At the very least, therefore, the city council knew that class actions seeking statutory damages could be brought in federal court under Rule 23. Moreover, Amazon has never disputed that even in state court, plaintiffs could bring a class action seeking injunctive relief or actual damages for violations of the biometric privacy law. In other words, the council knew that class actions could be brought under the biometric privacy law in federal or state court, yet still it chose to limit the pre-suit notice requirement to those who "initiate" an action—and chose not to extend it to absent class members.

New York construes its consumer protection statutes "liberally . . . in favor of consumers." *DaimlerChrysler Corp. v. Spitzer*, 7 N.Y.3d 653, 660 (2006). Construing New York City's biometric privacy law to foreclose relief to unnamed class members simply because they did not send an unnecessary notice would fly in the face of this principle—not to mention the text of the statute.

The district court's decision to disregard the statute's plain text was manifestly wrong. This Court should grant permission to appeal.

## II. Review is particularly important here because the dismissal of the absent class members' signage claims threatens the viability of the individual plaintiffs' claims.

The district court's manifest error, standing alone, is sufficient to warrant interlocutory review. But review is particularly warranted here because, without a class action, it will be difficult for the named plaintiffs to continue to pursue this claim. The law provides damages of only $500 per violation of the prohibition on collecting biometric information without posting signs informing customers. N.Y.C. Admin. Code § 22-1203(1). But the costs of this litigation, including experts, will far exceed that amount. If the claim cannot be pursued as a class action, it will be difficult to pursue at all. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims."). But litigation is the only way to ensure that Amazon complies with the law. After all, the company has explicitly refused to do so, insisting that it does not need to. *See supra* page 7. This Court should grant review not only because the district court manifestly erred, but also because if this litigation is thwarted by that error, Amazon will brazenly continue violating the rights of countless consumers who will unwittingly have their biometric information collected by Amazon Go stores. *Cf. Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) (explaining that absent class action, there would likely be insufficient enforcement of a statute that

provided statutory damages of up to $1,000 because of the "low amount of statutory damages available" in an individual action).

## CONCLUSION

This Court should grant the petition for permission to appeal.

Respectfully submitted,

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett
GUPTA WESSLER LLP
505 Montgomery Street
Suite 625
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

Phillip L. Fraietta
Julian C. Diamond
Matthew A. Girardi
BURSOR & FISHER, P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
(646) 837-7150
*pfraietta@bursor.com*
*jdiamond@bursor.com*
*mgirardi@bursor.com*

Peter Romer-Friedman
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
(202) 355-6364

*peter@prf-law.com*

Christopher K. Leung
LEUNG LAW PLLC
1 Dock 72 Way
7th Floor
Brooklyn, NY 11205
(212) 498-8991
*chris@impact-lit.com*

Albert Fox Cahn
David Siffert
SURVEILLANCE TECHNOLOGY
OVERSIGHT PROJECT
40 Rector Street
9th Floor
New York, NY 10006
(212) 518-7573
*albert@stopspying.org*
*david@stopspying.org*

August 6, 2024                              *Counsel for Plaintiffs-Petitioners*

## CERTIFICATE OF COMPLIANCE

This petition complies with the page-volume limitations set out in Ninth Circuit Rule 5-2(b) and 32-3 because it is 4,395 words. This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

_/s/ Jennifer D. Bennett_
Jennifer D. Bennett

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2024 I electronically filed the foregoing petition with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the ACMS system. All counsel consented in writing to electronic service via email.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett

# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUZANNE MALLOUK, ALFREDO
RODRIGUEZ PEREZ, ARJUN DHAWAN,
and WILLIAM NOVOLT

Plaintiffs,

v.

AMAZON.COM, INC. and STARBUCKS
CORPORATION,

Defendants.

Case No. C23-852-RSM

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS

## I. INTRODUCTION

This matter comes before the Court on Defendants Amazon.com, Inc. and Starbucks Corporation (collectively, "Defendants")'s Motion to Dismiss for Failure to State a Claim, Dkt. #45. Plaintiffs Suzanne Mallouk, Alfredo Rodriguez Perez, Arjun Dhawan, and William Novolt (collectively, "Plaintiffs") oppose the Motion. Dkt. #49. The Court has determined it can rule on the Motion without the need for oral argument. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.

## II. BACKGROUND

Unless stated otherwise, the following facts are drawn from Plaintiffs' Amended Complaint, Dkt. #42.

ORDER GRANTING AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS - 1

Plaintiffs filed their Amended Complaint on September 8, 2023. Dkt. #42. Plaintiffs bring this putative class action for damages and other remedies resulting from Amazon's and Starbucks' alleged illegal actions of retaining, storing, collecting, profiting, etc. from Plaintiffs' and others' biometric identifier information. Plaintiffs raise claims pursuant to: (1) New York City's Biometric Identifier Information Law, N.Y.C. Admin. Code § 22-1202(a); (2) N.Y.C. Admin. Code § 22-1202(b); and (3) unjust enrichment. Plaintiffs seek class certification, compensatory, statutory, and punitive damages, prejudgment interest, restitution, injunctive relief, and reasonable attorneys' fees and costs.

**A. New York City's Biometric Identifier Information Law**

In 2021, New York City enacted its Biometric Identifier Information Law to address the growing use of biometric identifier information by commercial establishments. This law makes it unlawful for companies to "sell, lease, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." N.Y.C. Admin. Code § 22-1202(b). The law also has a disclosure provision, requiring these companies that store, collect, share, etc. biometric identifier information to disclose such actions "by placing a clear and conspicuous sign near all . . . . entrances notifying customers in plain, simple language" prescribed by the Commissioner of Consumer and Worker Protection. N.Y.C. Admin. Code § 22-1202. Violations of these provisions provide statutory remedies and monetary amounts for those harmed. However, to succeed on a claim for violating the required sign disclosure, a prospective plaintiff must first send the company notice of the defect and allow the company thirty days to cure it. No such notice requirement is attached to a violation of

selling, sharing, or otherwise profiting from the exchange of a plaintiff's biometric identifier information. The law defines biometric identifier information as "a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint, (iii) a scan of hand or face geometry, or any other identifying characteristic." N.Y.C. Admin. Code § 22-1201.

### B. Amazon "Just Walk Out" Technology

In 2018, Amazon launched its Amazon Go stores, selling consumer goods using a feature called "Just Walk Out" technology. This technology uses computer vision, algorithms, and "sensor fusion" to combine data from sensors and cameras within the store. This technology allows Amazon to identify and track the movements of a customer shopping in the store. To enter an Amazon Go store, customers either scan a credit card, a QR code generated by the Amazon mobile app, or scan their palms registered through Amazon One technology. Using cameras and sensors, Amazon can personally identify customers in the store and use identifying information to determine what products a customer decides to buy or not buy. Customers are then able to simply just walk out of the store with their chosen products. Using the identifying information while in the store, Amazon detects what products the customers chose to walk out with and charges the cost to customers' credit cards or Amazon accounts, depending on the customer's method of entering the store.

### C. Starbucks-Amazon Go

In November 2021, Amazon and Starbucks collaborated to combine the Starbucks Pickup and Amazon Go experiences into one location. At these storefronts, customers can order ahead through the Starbucks app to pickup beverages from the Starbucks side of the store, but customers also can enter an Amazon Go market at the same location to browse additional items and utilize a lounge area to enjoy both Starbucks and Amazon Go products. While Starbucks purchases are made through the Starbucks application, Amazon Go purchases are acquired using the Just Walk Out technology.

**D. Plaintiffs**

Plaintiffs entered Starbucks-Amazon Go stores throughout 2022 and 2023 by using QR codes, palm scans, and a credit card. Plaintiffs did not see the required signage notifying them that biometric identifier information was being collected. Afterward, Plaintiffs Rodriguez Perez, Mallouk, and Novolt mailed letters to Amazon (Mallouk to Starbucks as well) stating that the stores did not provide the required signage notifying customers that biometric information was being collected. Plaintiff Mallouk received no response from Starbucks. Plaintiff Rodriguez Perez received no response from Amazon. Plaintiffs Novolt and Mallouk, however, did receive responses from Amazon. Amazon's response to Plaintiff Novolt stated that the Starbucks-Amazon Go store did not collect, retain, or share data as the NYC law required, thus the signage was not required. Amazon's response to Plaintiff Mallouk also stated that the Starbucks-Amazon Go store was not required to post signage pursuant to the NYC statute, but they had installed signage at the store Plaintiff Mallouk used. However, Plaintiffs allege that this signage

ORDER GRANTING AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS - 4

only warns of collecting biometric identifier information through its use of palm scans, not by using identifier information on every customer who enters the Amazon Go store.

## III.    ANALYSIS

### A.  Legal Standard

#### a.   Standing and Rule 12(b)(1)

Pursuant to Article III of the US. Constitution, federal courts have limited jurisdiction to hear only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (192); U.S. CONST. art III, § 2.  Accordingly, "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011).  To satisfy the case-or-controversy requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  When a plaintiff lacks standing, dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Walsh v. Microsoft Corp.*, 63 F.Supp. 3d 1312, 1317-18 (W.D. Wash. 2014).

A motion to dismiss under Rule 12(b)(1) can attack the factual allegations establishing standing or can attack plaintiff's standing facially. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "The district court resolves a facial attack as it would a motion to dismiss under 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th

Cir. 2013)).  At the pleading stage, a plaintiff need not satisfy *Iqbal/Twombly's[1]* plausibility standard but "must 'clearly . . . allege facts demonstrating' each element" of standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  As such, the inquiry does not touch directly on the merits of the plaintiff's case.  *See Maya*, 658 F.3d at 1068 (contrasting with consideration of a Rule 12(b)(6) motion which "necessarily assesses the merits of the plaintiff's case").

### b. Rule 12(b)(6)

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the

---

[1] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S.

ORDER GRANTING AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS - 6

challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### B. Analysis

#### a. Article III Standing

Defendants first argue that Plaintiffs lack Article III standing because Plaintiffs consented to the use of Amazon's technology. Dkt. #45 at 12-17. Drawing all inferences in a light most favorable to Plaintiffs as the non-moving party, the Court finds several reasons to side with Plaintiffs on this issue. First, unlike other laws on biometric identifying information, NYC's law does not include a consent limitation or defense. § 22-1202(a) specifically states that businesses must post "clear and conspicuous sign[age]" by all entrances in order to notify customers that their information is being collected, stored, or shared. Furthermore, exactly what Plaintiffs are consenting to when entering an Amazon Go store is questionable. Plaintiffs entered the stores using several mechanisms, including by scanning a credit card, their palms, or a digital QR code from their personal Amazon accounts. Dkt. #42 at 46-57. Defendants attempt to distinguish Plaintiffs Dhawan and Novolt from the group because they registered their palms at Amazon One kiosks, implying they specifically consented to Amazon's use of the JWO Technology. *Id.* at 148, 155; Dkt. #45 at 16-17. But it is unclear what Plaintiffs Dhawan and Novolt consented to concerning their palm scans. As the Amended Complaint alleges, Plaintiff Dhawan scanned his palm to enter the store. Dkt. #42 at 148. However, Plaintiff Dhawan possibly registered his palm at an Amazon kiosk for other reasons, such as to make a purchase at a Whole Foods Market. Though the Amended Complaint says that Plaintiff Novolt registered his palm at the Amazon Go store, it is still unclear whether Plaintiff Novolt was consenting to the use and storage of his biometric information or if he simply thought it the easiest method or required to enter the store. *Id.* at 155. Furthermore, as the NYC law does not include a consent

ORDER GRANTING AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS - 7

1   exemption or defense, the Court is inclined to agree with Plaintiffs that NYC requires specific

2   signage for adequate notice and consent to occur.  Dkt. #49 at 9.  Drawing all reasonable

3   inferences in Plaintiffs' favor, the Court finds that these issues of notice and consent are questions

4   of fact best left to a jury and not for this Court to decide on a motion to dismiss.

**b.  Notice Requirement**

6   Defendants argue that Plaintiff Dhawan and the absent class members must be dismissed

7   from Count 1 of the First Amended Complaint for failure to comply with the New York City

8   ("NYC") statute's notice requirement.  Dkt. #45 at 17.  Plaintiffs contend that Plaintiffs Mallouk,

9   Perez, and Novolt gave the required pre-notice for themselves, Plaintiff Dhawan, and the class

10  members because the statute only requires that the named plaintiff who initiates the statute must

11  provide notice, not absent class members who might join later.  Dkt. #49 at 14-18.

12  When interpreting a statute, this Court is guided by the fundamental canons of statutory

13  construction and begins with the statutory texts.  *See BedRoc Ltd., LLC v. United States*, 541 U.S.

14  176, 183 (2004).  The Court interprets statutory terms in accordance with their ordinary meaning,

15  unless the statute clearly expresses an intention on the contrary.  *United States v. Ron Pair*

16  *Enters., Inc.*, 489 U.S. 235, 242 (1989).  Furthermore, the Court must "interpret [the] statut[e] as

17  a whole, giving effect to each word and making every effort not to interpret a provision in a

18  manner that renders other provisions of the same statute inconsistent, meaningless or

19  superfluous."  *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991).

20  Additionally, "[p]articular phrases must be construed in light of the overall purpose and structure

21  of the whole statutory scheme."  *United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995).

22  Here, a review of the record and law reveals that NYC's overall purpose is to limit

23  statutory damages to plaintiffs who fully comply with statutory pre-notice requirements.  The

24  statute specifically states that a person aggrieved by a commercial establishment not posting clear

and conspicuous signage may commence an action "on his or her own behalf[,]" and this aggrieved person must provide written notice to the offending party before initiating an action. *See* N.Y.C. Admin. Code § 22-1203. The basic language of the statute clearly appears to limit recovery for no proper signage to plaintiffs who comply with the pre-suit notice. Therefore, based on the plain meaning of the statute, the Court finds that purported class action members and Plaintiff Dhawan must be dismissed from Count 1 for failure to comply with the pre-suit notice requirement.

### c. Sufficient Facts

Defendants argue that Plaintiffs Dhawan and Mallouk fail to plead sufficient fact to allege a violation of NYC § 22-1201(b). Dkt. #45 at 20-21. Plaintiffs contend that Amazon and Starbucks have profited from the sharing of biometric identifier information with third parties such as Panera Bread stores and T-Mobile Stadium, that Starbucks collects palm images and size and shape information from customers it shares with Amazon's outside servers, and that Amazon received "monetary compensation" for sharing its palmprint databases, as well as "tangible and intangible benefits" including opportunities to install more devices, advertising, and growing and improving its database and technology by sharing biometric data with third-party retailers . Dtks. #42 at 77-79, #49 at 18-21.

Under § 22-1201(b), it is "unlawful [for a commercial establishment] to sell, lease, trade, share in exchange for anything of value or otherwise profit form the transaction of biometric identifier information." NYC § 22-1201(b).

Here, Plaintiffs identify two main parties Amazon allegedly shared biometric identifier information with: Starbucks and Whole Foods. Dkt. #42 at 77. Plaintiffs also, as mentioned above, mention Panera Bread retailers and T-Mobile Stadium. Dkt. #49 at 19. Regarding Whole Foods, even assuming that Plaintiffs conclusively proved Amazon shares biometric identifier

1   information with Whole Foods, the Court fails to see how this would violate § 22-1201(b) since

2   Amazon owns Whole Foods and does not constitute a "third party" under the statue.  Between

3   Amazon and Starbucks (and other third parties), Plaintiffs contend that Amazon "provides . . .

4   palm scanner devices and databases to . . . Starbucks-Amazon Go stores in New York City."  Dkt.

5   #42 at 3-4.  Specifically, Plaintiffs' theory is as follows:

6   > [Amazon has] gained [and] profited from sharing, leasing, trading or selling its
        Amazon One devices and databases by . . . allow[ing[ Amazon to link individuals'
7   > biometric information to other valuable forms of information [like] . . . consumers'
        phone numbers, credit or debit card numbers, and in-store activities like purchase
8   > history . . . allowing Amazon (or other third parties willing to pay Amazon for such
        packaged data) to make more targeted advertising, marketing, pricing, and
9   > promotional decisions.

10  Id. at 65-66.

11      The Court finds Plaintiffs' theory unpersuasive.  First, § 22-1201(b) does not prohibit

12  companies from receiving "any benefit, no matter how attenuated, from the sharing of biometric

13  data.  Rather it makes it unlawful for companies to 'profit from the transaction itself.'"  *Gross v.*

14  *Madison Square Garden Ent. Corp.*, 2024 WL 2055343, at *1 (S.D.N.Y. May 7, 2024).  Here,

15  the profit Plaintiffs allege appears to "flow from defendant's employment of broader program,

16  albeit one advanced by biometric data sharing."  *Id*.  Second, if "profit" were construed as

17  liberally as Plaintiffs posit, § 22-1201(b) would essentially nullify § 22-1201(a), since it would

18  effectively ban all biometric data sharing that is useful, thus rendering the notice requirement

19  meaningless.  *See Gross* at *1.  Taking all reasonable inferences in a light most favorable to

20  Plaintiffs, the Court finds that – at least on the facts alleged – Defendants' use of biometric data

21  is a tool or element it uses to further its business goals and not a violation within the meaning of

22  § 22-1201(b).

23      **d.  Unjust Enrichment**

24

ORDER GRANTING AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS - 10

1    Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed because: (1)

2    Plaintiffs Dhawan and Novolt did not allege that they purchased anything in the Amazon Go

3    store; (2) it is duplicative of their other claims; and (3) there is a valid contract between the

4    parties. Dkt. #45 at 21-22. Plaintiffs contend that: (1) the Complaint alleges the Plaintiffs did

5    make purchases, and even if they did not, "Defendants were still enriched by obtaining Plaintiffs'

6    biometric data and sharing it for profit[;]" (2) the claim is not duplicative but "in the

7    alternative[;]" and (3) any contract between the parties is "lacking" because Plaintiffs "did not

8    consent to Defendants' collection of their biometric information[.]" Dkt. #49 at 21.

9    Washington law is clear that "[u]njust enrichment is the method of recovery for the value

10   of the benefit *absent any contractual relationship*[.]" *Young v. Young*, 164 Wn.2d 477, 484, 191

11   P.3d 1258, 1262 (2008) (emphasis added); *see Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d

12   591, 604, 137 P.2d 97 (Wash. 1943) ("A party to a valid express contract is bound by the

13   provisions . . . and may not disregard the same and bring an action on an implied contract relating

14   to the same matter[.]"); *see also Pengbao Xia v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191

15   (W.D. Wash. 2019 ("Where a valid contract governs the rights and obligations of the parties,

16   unjust enrichment does not apply."). Under New York law, where "there is a bona fide dispute

17   as to the existence of a contract, or where the contract does not cover the dispute in issue, a

18   plaintiff may proceed upon a theory of quasi-contract" unjust enrichment. *AHA Sales, Inc. v.*

19   *Creative Bath Products, Inc.*, 867 N.Y.S.2d 169, 180 (N.Y. App. Div. 2008). As discussed

20   above, while the parties might have a valid contract, it is unclear exactly what Plaintiffs consented

21   to by signing up for palm scans and/or entering the Starbucks-Amazon Go store. Therefore,

22   whether the contract governs these terms or not, Plaintiffs are not barred by neither Washington

23   nor New York law from bringing an unjust enrichment claim because of a contract.

24

ORDER GRANTING AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS - 11

The Court is still unconvinced that all Plaintiffs have a survivable unjust enrichment claim at this point. Plaintiffs argue that they would not have entered and made purchases in the store if they had known Amazon was collecting biometric identifier information. Dkt. #48 at 21. However, Plaintiffs fail to allege facts sufficiently showing how Amazon profited or was otherwise unjustly enriched by this process because it is not clear that Amazon shared any biometric identifier information for profit. Though Plaintiffs argue they would not have made purchases had they known of this collection, this appears duplicative of Plaintiffs claims under § 22-1201(a), which provide for recovery due to lack of required notice. However, while unjust enrichment claims brought by Plaintiffs with § 22-1201(a) claims might be duplicative, Plaintiffs such as Dhawan and others who failed to provide the required pre-suit notice to succeed on a § 22-1201(b) could bring unjust enrichment claims under the premise that they would not have made store purchases if they had known Amazon was collecting biometric identifier information. Though Defendants state that Plaintiff Dhawan does not allege that he purchased anything in the store, taking all reasonable inferences in Plaintiffs' favor, the Complaint does allege that Plaintiff Dhawan "would not have entered the Amazon Go store or purchased anything from the store, or would not have paid as much for the items he purchased" if he had known Amazon was collecting his information. Thus, the Court finds that Plaintiff Dhawan does have a potential unjust enrichment claim.

**e. Starbucks**

Defendants argue that Starbucks should be dismissed from the case because Starbucks is distinct from the Amazon-portion of the Starbucks-Amazon Go store, and Starbucks does not collect, retain, sell, or trade biometric identifier information or otherwise violate § 22-1201(b). Dkt. #45 at 23. Defendants note that none of the Plaintiffs allege to have even used the Starbucks portion of the store. *Id*. at 23-24. Plaintiffs contend that Starbucks cannot be dismissed because

the Starbucks-Amazon Go store is a single store where biometric identifier information is being shared between Amazon and Starbucks upon entering the store.  Dkt. #49 at 21-23.

The Court finds that, taking all inferences in a light most favorable to Plaintiffs, Starbucks should be dismissed for similar reasons to dismissal of Plaintiffs' claims under § 22-1201(b). Though Starbucks employees work in the store and, perhaps, direct and instruct customers on palm scanning and entering the gated area, as Plaintiffs allege, Plaintiffs fail to allege sufficient facts that Starbucks plays any part in the control of the Just Walk Out technology or otherwise share in biometric identifier information as defined under § 22-1201(b).  For similar reasons to Plaintiffs' § 22-1201(b) claims warranting dismissal, at this stage, Starbucks shall be dismissed as a defendant in this case.

## IV.    CONCLUSION

Having revied the relevant pleadings and briefings and the remainder of the record, the Court finds and ORDERS that Defendants' Motion to Dismiss, Dkt. #45, is GRANTED IN PART and DENIED IN PART as follows:

(1) Plaintiff Dhawan's and purported class members' claims under N.Y.C. Admin. Code § 22-1201(a) are DISMISSED;

(2) Plaintiffs' claims under N.Y.C. Admin. Code § 22-1201(b) are DISMISSED;

(3) Defendant Starbucks is DISMISSED from this case;

(4) Plaintiff Dhawan's unjust enrichment claim STANDS.  All other Plaintiffs' unjust enrichment claims are DISMISSED.

DATED this 23rd day of July, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE